IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ORVIN LEE SAMPSON,

    Plaintiff,

v.                                                  Civil Action No. 3:17CV715

HAROLD W. CLARKE, et al.,

    Defendants.

**MEMORANDUM OPINION**

Orvin Lee Sampson, a Virginia inmate proceeding pro se, filed this 42 U.S.C. § 1983 action. Sampson names the following individuals as defendants: Harold W. Clarke, Director of the Virginia Department of Corrections ("VDOC"); A. David Robinson, Director of Corrections Operations; D. Ratliffe-Walker, Warden of Lunenburg Correctional Center ("LCC"); Charlene Davis, Regional Administrator for the VDOC; B. Reed, Food Director; and, Phyllis Hughes, Assistant Food Director (collectively, "Defendants"). The matter is before the Court on Defendants' Motion to Dismiss and the Court's responsibility to review prisoner actions under 28 U.S.C. § 1915(e)(2). For the reasons that follow, the Motion to Dismiss (ECF No. 13) will be granted.

**I. PRELIMINARY REVIEW**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

While the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PERTINENT ALLEGATIONS

At all times pertinent to the Complaint, Sampson was confined in LCC. (Compl. ¶ 2.) "Sampson is a Messianic Jew." (Id. ¶ 41.) As a Messianic Jew, on the Day of Atonement, Yom Kippur, Sampson was and is required to fast for twenty-four hours, from sundown to sundown. (Id. ¶¶ 12, 15.) Sampson, also alleges, in a somewhat confusing fashion that, "during the Messianic fast, he can only eat prior to sunrise and after sunset." (Id. ¶ 41.) On July 1, 2015, Defendant Robinson implemented a policy that provides that those observing the Day of Atonement will be provided with only two meals at the conclusion of their twenty-four hour fast. (Id. ¶ 15.)

In 2016, Sampson was employed in the Food Service Department at LCC. (Id. ¶¶ 27, 30.) After sundown on October 12, 2016, Sampson began fasting in observance of the Day of Atonement. (Id. ¶ 12.) On October 13, 2016, Sampson "was given breakfast before the sun came up and nothing else to eat until the sundown of the day. After sundown [Sampson] was given a dinner tray plus a bag meal to meet the calorie intake of the day . . . ." (Id. ¶¶ 41, 42.) Sampson noticed that the bag meal "was not properly equipped with the calories dietary count intake for that day . . . ." (Id. ¶ 43.)

Sampson brought the perceived inadequacy of the bag meal to the attention of Food Service Director Reed. (Id. ¶ 44.) Defendant Reed directed Sampson to take the issue up with Assistant Food Service Director Hughes. (Id.) Defendant Hughes told Sampson, "I don't know what to tell you." (Id.)

Sampson then went Food Service Supervisor Bennet. (Id. ¶ 45.) Mr. Bennet acknowledged that Sampson was "missing a meal." (Id.) Sampson asked Mr. Bennet if he could put, a peanut butter and jelly sandwich, vegetables, and fruit in a bag. (Id.) Mr. Bennet agreed to allow Sampson to put the above items in a bag. (Id.)

Upon discovering Sampson's actions, Defendant "Reed sent [Sampson] back to his housing unit due to preparing unauthorized food and putting extra in the snack bags." (Id. ¶ 13.) Additionally, on October 13, 2016, Defendant Reed requested that Sampson be terminated from his job with Food Service Department on the grounds that, inter alia, Sampson was "unwilling to follow policy, instructions, and directives within the Food Service Operation." (ECF No. 1-1, at 12.)

On November 1, 2016, Sampson filed a grievance complaining about his termination from his job for placing extra food in the bag meals provided for after the fast of Yom Kippur. (Id. at 8.) Defendant Ratliffe-Walker denied Sampson's grievance noting, Sampson "played one supervisor against another" and placed extra food in the bags when you were told by Defendants Hughes and Reed

to follow the memo. (Id. at 9.) Sampson appealed the denial of his grievance. (Compl. ¶ 22.) Defendant Davis denied Sampson's appeal. (Id.)

### III. SUMMARY OF CLAIMS

Sampson contends that the Defendants' actions violated his "constitutional right to be employed, and to practice his religion in a proper manner . . . ." (Compl. ¶ 9.) Sampson contends that by failing to provide him proper meals to break the fast of Yom Kippur and then terminating him from his job Defendants violated his rights under the First Amendment, the Eighth Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[1] (Id. ¶¶ 10, 28, 40, 51.) Sampson also claims that Defendants' action violated his rights under the Fifth Amendment,[2] the Sixth Amendment,[3] the

---

[1] 42 U.S.C. § 2000cc-1(a).

[2] The Fifth Amendment provides:
No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.
U.S. Const. amend. V.

[3] The Sixth Amendment provides:

5

Religious Freedom Restoration Act,[4] and Article 1, section 8 of the Virginia Constituion.[5] (See, e.g., Compl. ¶¶ 28, 50.) It is appropriate the summary dismiss these claims, as Sampson fails to suggest how the Fifth Amendment, Sixth Amendment, and Article 1, section 8 of the Virginia Constituion are implicated, much less violated, by Defendants' actions. Furthermore, the Supreme Court has found that Congress exceeded its powers by applying RFRA to states and localities under Section 5 of the Fourteenth Amendment. City of Boerne v. Flores, 521 U.S. 507, 536 (1997). Accordingly, any claim under RFRA, the Fifth Amendment, the Sixth Amendment, Article 1, section 8 of the Virginia Constitution will be dismissed.

## IV. ANALYSIS

### A. RLUIPA AND THE FIRST AMENDMENT

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or

---

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.
U.S. Const. amend. VI.

[4] 42 U.S.C. § 2000bb.

[5] Article 1, section 8 of the Virginia Constitution pertains to criminal prosecutions.

6

>     confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
>       **(1)** is in furtherance of a compelling governmental interest; and
>       **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, to begin, Sampson must allege facts plausibly suggesting that Defendants' policies impose a "substantial burden" on his religious exercise. In determining if Sampson has met this standard, the Court must answer two questions: "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?" Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004); see Couch v. Jabe, 679 F.3d 197, 200-01 (4th Cir. 2012) (employing similar two-part inquiry).

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Couch, 679 F.3d at 200 (quoting 42 U.S.C. § 2000cc-5(7)(A)). Sampson's claim implicates one activity—his ability to observe the fast of Yom Kippur and immediately thereafter have adequate food. Given RLUIPA's broad definition of religious exercise, this activity constitutes religious exercise. Nevertheless, as explained below, Sampson fails to alleges facts that plausibly indicate this religious exercise was or will be substantially burdened.[6]

---

[6] The Court construes Sampson to claim not merely to challenge Defendants conduct for Yom Kippur 2015, but also to challenge the

7

RLUIPA fails to define the term substantial burden. See Couch, 679 F.3d at 200. The United States Court of Appeals for the Fourth Circuit determined that the Supreme Court's jurisprudence interpreting the Free Exercise Clause provides guidance on the issue. See Lovelace, 472 F.3d at 187. Thus, the Fourth Circuit has explained that a substantial burden

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.

Couch, 679 F.3d at 200 (alterations and omission in original) (quoting Lovelace, 472 F.3d at 187). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to [allege facts indicating] that the exercise at issue is required by or essential to his [or her] religion." Krieger v. Brown, 496 F. App'x 322, 325 (4th Cir. 2012) (citing Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a RLUIPA plaintiff [allege facts indicating] that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing Midrash Sephardi, Inc. v. Town of Surfside,

---

Defendant Robinson's policy that only provides for two meals after the fast of Yom Kippur. (Compl. ¶ 15.)

8

366 F.3d 1214, 1227 (11th Cir. 2004));[7] cf. Krieger, 496 F. App'x at 326 (affirming grant of summary judgment where inmate failed to "show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs" (citing Lovelace, 472 F.3d at 187)). Thus, no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007).

Two recent cases from the Fourth Circuit illustrate a plaintiff's responsibility with respect to alleging facts that plausibly suggest a substantial burden. In Couch, the plaintiff "testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin comparable in severity to eating pork." Couch, 679 F.3d at 200. The VDOC's grooming policy prohibited inmates from growing beards and enforced this rule by placing a noncompliant inmate in a program that "restricted or limited [the inmate's] access to personal property, movement rights, the right to eat and associate

---

[7] In Sossamon v. Texas, 563 U.S. 277, 293 (2011), the Supreme Court abrogated Smith's ultimate holding that RLUIPA allows for monetary damages against state officials acting in their official capacity.

9

with others, recreation time, and visitation time." Id. at 199. The Fourth Circuit concluded that VDOC's grooming policy and enforcement mechanism "fit squarely within the accepted definition of 'substantial burden'" because it placed substantial pressure on the plaintiff to modify his behavior and violate his beliefs. Id. at 200-01 (citing Warsoldier v. Woodford, 418 F.3d 989, 995-96 (9th Cir. 2005)).

In Krieger, the Fourth Circuit declined to find that an inmate had demonstrated a substantial burden where prison officials denied "his requests for an 'outdoor worship circle' and certain 'sacred items' related to his religious practice of Asatru." Krieger, 496 F. App'x at 322. The plaintiff "asserted that deprivation of the outdoor worship circle would require him to pray indoors, and that the 'Blot' ceremony is '<u>best</u> performed outdoors.'" Id. at 325 (emphasis added). The Fourth Circuit concluded that the mere denial of the optimal manner for performing the "Blot" ceremony could not demonstrate a substantial burden where the plaintiff "failed to offer any explanation regarding the reason why indoor worship would compromise his religious beliefs." Id. Similarly, the inmate failed to demonstrate a substantial burden with respect to the denial of additional sacred items simply by the "blanket assertion" that "the sacred items were 'necessary' to perform 'well-established rituals.'" Id. at 326. The Fourth Circuit noted that plaintiff "did not identify those rituals, or

10

explain why the absence of the sacred items had an impact on the rituals and violated his beliefs." Id.

Krieger illuminates another consideration in conducting the substantial burden inquiry. The availability to an inmate, in the most general sense, of other means to practice his or her faith is not relevant to the RLUIPA substantial burden inquiry. Al-Amin v. Shear, 325 F. App'x 190, 193 (4th Cir. 2009). "Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity, such as the "Blot" ceremony, in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden." Shabazz v. Va. Dep't Corr., 3:10CV638, 2013 WL 1098102, at *7 (E.D. Va. Mar. 15, 2013) (citing Krieger, 496 F. App'x at 326; Coleman v. Governor of Mich., 413 F. App'x 866, 875-76 (6th Cir. 2011)). Thus, an inmate failed to demonstrate the denial of additional group study time imposed a substantial burden upon his religious exercise where prison officials already provided three hours of group study and worship time and allowed inmate to study in his cell. See Van Wyhe v. Reisch, 581 F.3d 639, 656-57 (8th Cir. 2009). Similarly, the United States Court of Appeals for the Sixth Circuit concluded that prison policies which limited the inmates' access to religious radio and television broadcasts failed to substantially burden the inmates' religious exercise because the inmates "may receive religious literature via

11

the mail and may receive visitors at the prison to discuss their religious beliefs." Coleman, 413 F. App'x at 876. As explained below, in light of the foregoing principles, Sampson fails to allege facts that plausibly suggest any substantial burden upon his religious exercise.

Here, it is undisputed that Sampson was permitted to fast for the religiously required period during Yom Kippur. In order to provide Sampson with food upon the conclusion of the fast, Defendants provided Sampson with "a dinner tray plus a bag meal." (Compl. ¶ 42.) Sampson, however, apparently wanted to be provided with a third meal to make up for every meal he skipped. Given the food provided, the failure to provide Sampson with additional food (in the form of a PB&J sandwich, fruit and vegetables) hardly placed "substantial pressure" on Sampson to violate his religious beliefs or abandon one of the precepts of his religion. Whitehouse, 2011 WL 5843622, at *4 (citing Lovelace, 472 F.3d 187); cf. Living Water Church of God, 258 F. App'x at 739. Indeed, to so hold demeans the notion of a substantial burden. At most, Sampson alleges an inconvenience to his religious exercise. See Smith, 502 F.3d at 1278 (explaining that a burden that is merely an "inconvenience on religious exercise" is not substantial); Living Water Church of God, 258 F. App'x at 739 (no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult"). While Sampson's preferred

manner for breaking his fast was to provide him with the full three meals upon the conclusion of his fast, the failure to do so fails to state a claim under RLUIPA. Cf. Van Wyhe, 581 F.3d at 657 ("The prison must permit a reasonable opportunity for an inmate to engage in religious activities but need not provide unlimited opportunities."). Accordingly, Sampson's RLUIPA claims will be dismissed.[8]

Similar to RLUIPA, to state a First Amendment, a plaintiff must state facts that indicate he engaged in a religious exercise and that the exercise has been substantially burdened. RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States. Lovelace, 472 F.3d at 186. "Thus, because plaintiff failed to allege facts sufficient to establish a substantial burden under the more protective standard or RLUIPA, his claim must fail under the more stringent standard of the Free Exercise Clause." Accordingly, Sampson's First Amendment claims will be dismissed.

---

[8] It is not clear whether Sampson also believes firing him from his job also somehow violated RLUIPA, the First Amendment, the Eighth Amendment, and the Fourteenth Amendment. What is clear, however, is that terminating Sampson from his job did not violate RLUIPA, the First Amendment, the Eighth Amendment, and the Fourteenth Amendment. Thus, to the extent Sampson seeks to bring constitutional or statutory claims under that theory, they are meritless and will be dismissed.

B.  **Eighth Amendment**

To state an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)). "What must be [alleged] with regard to each component 'varies according to the nature of the alleged constitutional violation.'" Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he must allege "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing Wilson, 501 U.S. at 301-03). Deliberate indifference requires the plaintiff to allege facts suggesting that a particular defendant actually knew of and

14

disregarded a substantial risk of serious harm to the plaintiff's person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

"The Eighth Amendment requires that inmates be provided 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999) (alteration in original) (some internal quotation marks omitted) (quoting Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986)); see also Wilson v. Johnson, 385 F. App'x 319, 320 (4th Cir. 2010) (citations omitted) (explaining that Eighth Amendment requires nutritionally adequate food). In determining whether an Eighth Amendment violation has occurred, "[c]ourts consider the amount and duration of the deprivation of food." Lockamy v. Rodriguez, 402 F. App'x 950, 951 (5th Cir. 2010) (citation omitted) (finding deprivation of six meals in fifty-four hour period insufficient to state a claim absent allegation of injury as a result of missing meals); see Berry, 192 F.3d at 506-08 (finding deprivation of eight meals over seven-month period insufficient to state an Eighth Amendment claim absent specific allegations of physical harm). Here, after his voluntary fast in 2016, Sampson was provided with a dinner tray and a snack bag, which he then

15

supplemented with another sandwich and fruit and vegetables. The provision of this food fails to support the objective component for an Eighth Amendment claim. Additionally, the fact that, in the future, after his Yom Kippur fasts Sampson will only receive a dinner tray and a snack bag does not amount to more than the "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler v. Waters, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Furthermore, Sampson fails to allege facts that suggest that any Defendant should have perceived the failure to provide additional food would pose a substantial risk of serious harm to Sampson's person. Accordingly, Sampson's Eighth Amendment claims with respect to the provision of food will be dismissed.

Sampson also suggests Defendants violated his right under the Eighth Amendment by terminating him from his prison employment. This action fails to support an Eighth Amendment claim, see Padilla v. Beard, 206 F. App'x 123, 125 (3d Cir. 2006), as amended (Jan. 25, 2007), and will be dismissed.

C.  **Fourteenth Amendment**

1.  **The Due Process Clause**

Smith contends that Defendants deprived him of due process when they terminated him from his prison employment. The Due Process Clause applies when government action deprives an

16

individual of a legitimate liberty or property interest. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). Sampson does not enjoy a protected liberty interest in prison employment. See Robles v. Sturdinvant, No. 7:14-CV-00070, 2014 WL 4853409, at *1 (W.D. Va. Mar. 27, 2014) (citing Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50-51 (5th Cir. 1995); Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989); Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978); Alley v. Angelone, 962 F. Supp. 827, 834 (E.D. Va. 1997)), aff'd, 583 F. App'x 129 (4th Cir. 2014). Accordingly, Sampson's due process claims will be dismissed.

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Sampson must allege facts that indicate: "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Sampson has not

done so. Accordingly, Sampson's equal protection claims will be dismissed.

## V. CONCLUSION

Defendants' Motion to Dismiss (ECF No. 12) will be granted. Sampson's claims will be dismissed. The action will be dismissed. The Clerk will be directed to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

The Clerk is directed to send a copy of the Memorandum Opinion to Sampson and counsel for Defendants.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: December 28, 2018
Richmond, Virginia